[835 NE2d 650, 801 NYS2d 790]

In the Matter of JEFFREY H. MICHAELIS, M.D., Appellant, v DENNIS J. GRAZIANO, as Director of the Office of Professional Medical Conduct, et al., Respondents.

Argued June 1, 2005; decided June 30, 2005

318

**POINTS OF COUNSEL**

*Rende, Ryan & Downes, LLP,* White Plains (*Roland T. Koke* of counsel), for appellant. I. The Office of Professional Medical Conduct does not have distinct inspection rights under a comprehensive medical review order, other than ordinary subpoena power. (*Matter of Shankman v Axelrod,* 73 NY2d 203; *Tanner v Dr. A.,* 228 AD2d 238; *Matter of Levin v Murawski,* 59 NY2d 35.) II. The comprehensive medical review "procedure" denies appellant due process. (*Matter of Caselnova v New York State Dept. of Health,* 91 NY2d 441; *Matter of Ostad v New York*

*State Dept. of Health,* 309 AD2d 989; *Matter of Daniels v No-vello,* 306 AD2d 644.) III. Alternatively, the comprehensive medical review order is without factual basis and not demonstrably relevant to the investigation. (*Matter of Levin v Murawski,* 59 NY2d 35; *Matter of Levin v Guest,* 112 AD2d 830; *Matter of A-85-04-38,* 138 Misc 2d 786; *Dombroff v State Bd. for Professional Med. Conduct,* 131 Misc 2d 472; *Matter of BU-90-09-2400,* 184 AD2d 1028.) IV. The lower court improperly relied upon an in camera affidavit to resolve legal issues in dispute. (*Matter of Levin v Murawski,* 59 NY2d 35; *Matter of Levin v Guest,* 112 AD2d 830; *Matter of McBarnette v Sobol,* 83 NY2d 333.) V. Respondents should be compelled to give appellant written notice of the issues identified for investigation as required by statute.

*Eliot Spitzer, Attorney General,* New York City (*Shaifali Puri, Caitlin Halligan* and *Daniel Smirlock* of counsel), for respondents. I. Prohibition is not available to thwart the Office of Professional Medical Conduct's statutorily-authorized order issued in furtherance of the preliminary investigation into the complaint of misconduct against Jeffrey H. Michaelis, M.D. (*Matter of Doe v Axelrod,* 71 NY2d 484; *Matter of Rush v Mordue,* 68 NY2d 348; *Matter of Pirro v Angiolillo,* 89 NY2d 351; *Sega v State of New York,* 60 NY2d 183; *Matter of Town of Huntington v New York State Div. of Human Rights,* 82 NY2d 783; *Matter of Schumer v Holtzman,* 60 NY2d 46; *Matter of McGinley v Hynes,* 51 NY2d 116; *Matter of Lombardo v De-Buono,* 233 AD2d 789.) II. The Legislature expressly authorized the Director of the Office of Professional Medical Conduct to order a comprehensive medical review and did not condition that power on the issuance of a subpoena by the Executive Secretary of the Board for Professional Medical Conduct. (*Rangolan v County of Nassau,* 96 NY2d 42; *Matter of Theroux v Reilly,* 1 NY3d 232; *Matter of Shankman v Axelrod,* 73 NY2d 203; *Matter of Levin v Murawski,* 59 NY2d 35; *Tanner v Dr. A.,* 228 AD2d 238; *Matter of Ostad v New York State Dept. of Health,* 309 AD2d 989; *Matter of Daniels v Novello,* 306 AD2d 644.) III. The procedure for issuing a comprehensive medical review order pursuant to Public Health Law § 230 (10) (a) (iv) comports with due process. (*People v David W.,* 95 NY2d 130; *Matter of New York State Commn. on Jud. Conduct v Doe,* 61 NY2d 56; *Matter of Bell v New York State Dept. of Health,* 291 AD2d 744; *Matter of Daniels v Novello,* 306 AD2d 644; *Matter of Ostad v New York State Dept. of Health,* 309 AD2d 989; *Locurto v Safir,* 264 F3d 154.) IV. The in camera review of the Office of Professional

Medical Conduct's submissions to support the comprehensive medical review order was proper, and those submissions demonstrate the reasonable basis for the order and the relevance of the documents requested. (*Matter of McBarnette v Sobol,* 83 NY2d 333; *Matter of Levin v Guest,* 112 AD2d 830, 67 NY2d 629, 476 US 1171; *Tanner v Dr. A.,* 228 AD2d 238; *Atkins v Guest,* 201 AD2d 411; *Matter of Levin v Murawski,* 59 NY2d 35.)

## OPINION OF THE COURT

G.B. SMITH, J.

The central issue on appeal is whether the Office of Professional Medical Conduct (OPMC) was required to issue a subpoena in order to undertake a comprehensive medical review (CMR) of a doctor's records. We conclude that a subpoena was not required.

OPMC, a branch of the Department of Health responsible for investigating and monitoring misconduct, began an investigation of petitioner, Dr. Jeffrey Michaelis, pursuant to Public Health Law § 230 on October 19, 2001, after receiving a complaint regarding petitioner's care of a patient. On October 31, OPMC notified petitioner that it was investigating his medical practice, and "[t]he issue under investigation is the care and treatment rendered to [the patient]." During the investigation, OPMC conducted an interview of petitioner on November 28, 2001 pursuant to Public Health Law § 230 (10) (a) (iii).

On August 9, 2002, OPMC informed petitioner, in a letter, that evidence existed of a pattern of inappropriate medical practice and that a CMR of petitioner's patient records would be conducted. The letter notified petitioner that an OPMC staff person would come to his office on a scheduled date to select for copying a number of patient records and such other office records as related to the issues being reviewed. The letter also warned,

> "Any failure by you to comply with the order would constitute professional misconduct as defined in N.Y. Education Law § 6530 (15) and will result in a recommendation of prosecution for such misconduct. In addition, you may be subject to an enforcement proceeding, in New York State Supreme Court, pursuant to Public Health Law 230 (10) (o) (ii)."

Petitioner challenged the CMR order in a CPLR article 78 proceeding. Supreme Court denied petitioner's claims and a

divided Appellate Division affirmed. The two dissenting Justices maintained that, although OPMC had the authority to issue a CMR order, section 230 (10) (a) (iv) did not expressly indicate the process by which records should be made available. They reasoned that section 230 (10) (k), however, did provide for the issuance of subpoenas by the Executive Secretary of the State Board for Professional Medical Conduct upon approval of the committee and this section should govern OPMC's ability to conduct a CMR. Petitioner appeals as of right pursuant to CPLR 5601 (a). We now affirm.

■ We first address petitioner's argument that the OPMC Director lacked authority to compel a CMR. Section 230 of the Public Health Law governs proceedings involving professional medical misconduct. According to Public Health Law § 230 (10) (a) (iv) (A), when the Director of the OPMC determines, after consultation with an investigation committee, that "evidence exists of a single incident of negligence or incompetence, a pattern of inappropriate prescribing or medical practice . . . the director, in addition to the authority set forth in this section, shall be authorized to conduct a [CMR] of patient records . . . and such office records of the licensee . . . related to said determination." This subparagraph gives OPMC specific statutory authority to conduct a review of petitioner's records. The power, moreover, is *in addition to* the authority set forth in the section, including the power of the Executive Secretary to issue subpoenas (Public Health Law § 230 [10] [k]).[1]

The subpoena power authorized in Public Health Law § 230 (10) (k) is thus separate and distinct from the Director's authority to issue a CMR order under section 230 (10) (a) (iv) (A). It involves the Executive Secretary, not the Director, and does not necessarily relate to a preliminary investigation of a licensee, as a CMR does.

Petitioner's reliance on *Matter of Shankman v Axelrod* (73 NY2d 203 [1989]) is misplaced. *Shankman* involved OPMC's issuance of an ex parte "inspection" warrant after it had obtained

---

1. Public Health Law § 230 (10) (k) states:
    "The executive secretary of the board with the specific approval of a committee on professional conduct of the board shall have the power to issue subpoenas requiring persons to appear before the board and be examined with reference to a matter within the scope of the inquiry or the investigation being conducted by the board and produce books, papers, records or documents pertaining thereto."

authorization to serve a subpoena duces tecum pursuant to Public Health Law § 230 (10) (k) but failed to do so. The inspection warrant gave OPMC the right to inspect premises, question patients and remove records. This Court reasoned that, since OPMC had been expressly given the power to issue subpoenas and had not been given such ex parte "inspection" warrant right either by statute or inference, OPMC had no such power. In the present case, however, OPMC has specific statutory authority to issue a CMR order through Public Health Law § 230 (10) (a) (iv). There is no subpoena requirement that should be inferred in this statute. Reading Public Health Law § 230 (10) (a) (iv) in such a manner would inhibit OPMC's ability to investigate through a CMR, authority the Legislature intended OPMC to have.[2]

Further, the statute provided petitioner with the opportunity for judicial review of OPMC's CMR order. Public Health Law § 230 (10) (o) provides:

"Where the director has issued an order for a comprehensive medical review of patient records and office records . . . and the licensee has refused to comply with the director's order, the director may apply to a justice of the supreme court, in writing, on notice to the licensee, for a court order to compel compliance with the director's order."

Supreme Court shall not compel compliance unless it finds "(i) there was a reasonable basis for issuance of the director's order and (ii) there is reasonable cause to believe that the records sought are relevant to the director's order. The court may deny the application or grant the application in whole or in part."

Accordingly, when a physician refuses in good faith to comply with a CMR order (as petitioner did in this case), OPMC can seek an order compelling compliance pursuant to Public Health Law § 230 (10) (o). When a physician makes a good faith objection to the CMR, OPMC will not be able to charge a physician with misconduct arising from the failure to comply with the CMR order unless it has first established the propriety of the CMR in a section 230 (10) (o) proceeding (and then only if the

---

2. *See* Governor's Program Bill Mem, at 3, Bill Jacket, L 1986, ch 266 (stating section 230 [10] [a] [iv] was enacted to "broaden the investigative authority of the [OPMC]"); Letter from State Dept of Health, July 7, 1986, at 2, Bill Jacket, L 1986, ch 266 (stating that the amendments would "enhance the State's ability to identify incompetent physicians and monitor their compliance with conditions for continued practice").

physician continues to refuse to comply). Since the physician has an opportunity to be heard at the section 230 (10) (*o*) proceeding, his or her due process rights are not violated. The good faith exception, coupled with the opportunity for judicial review accorded by Public Health Law § 230 (10) (*o*), are sufficient to protect the physician's rights, as the facts of this case indicate. Upon petitioner's refusal to comply with the CMR order, OPMC cross-moved to enforce the CMR order under section 230 (10) (*o*). Both courts below held that OPMC established the reasonableness and relevance of the CMR order, a conclusion with which we agree.

Petitioner additionally claims that OPMC was required to divulge the nature of any new issues identified subsequent to the interview before issuing a CMR order. We disagree. Public Health Law § 230 (10) (a) (iii) states, "The licensee shall be given written notice of issues identified subsequent to the interview. The licensee may submit written comments or expert opinion to the office of professional medical conduct at any time." This language is designed to protect a licensee's right to respond to substantive allegations. It does not signify that OPMC had an obligation to divulge reasons in order to carry out a CMR. Petitioner was entitled to notice of any "issues identified" before charges relating to those issues were brought, but not before producing documents in connection with a CMR.

■ Petitioner claims that Supreme Court erroneously relied on an in camera affidavit, denying him an opportunity to respond fully to allegations charged within, and thereby denying him due process. This Court has stated, "If the issuing agency demonstrates the delicacy of a particular investigation or the risk of and consequences attendant on premature disclosure, it may be appropriate to take proof of the threshold foundation *in camera*" (*Matter of Levin v Murawski*, 59 NY2d 35, 42 n 4 [1983]). We agree with petitioner that the use of in camera submissions should be limited. Here, while much of the material contained in the in camera affidavit was properly withheld from petitioner, because it involved confidential aspects of the OPMC's investigation, some of the material—notably OPMC's description of its communications with petitioner himself—should not have been submitted in camera. It is clear, however, that no information in the latter category was material to the decision here, so any error in allowing material to be submitted without notice was harmless.

■ Finally, we underscore that OPMC's letter of August 9, 2002 was inaccurate in stating that a physician's failure to

comply would itself constitute professional misconduct and result in prosecution. Education Law § 6530 (15) defines as misconduct, "Failure to comply with an order issued pursuant to subdivision seven, paragraph (a) of subdivision ten, and subdivision seventeen of section two hundred thirty of the public health law." This language makes an exception for a timely good faith failure to comply due to a dispute over the availability, scope or necessity of records requested.

Petitioner's remaining claims are without merit.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order affirmed, with costs.